```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```

-------------------------------x

PEGGY HARLEY, et al.,[1]

        Plaintiff,　　　　　　　　　　**MEMORANDUM & ORDER**
　　　　　　　　　　　　　　　　　　　　　　19-cv-6152 (EK)(LB)
  - against -

EDWARD F. GUIDA, JR.,
in his individual capacity,
et al.

        Defendants.

-------------------------------x

ERIC KOMITEE, United States District Judge:

      Plaintiff Peggy Harley, *pro se*, filed this 42 U.S.C. § 1983 action on October 28, 2019. Plaintiff's claims predominantly arise from an alleged incident on April 17, 2019, when a New York City Housing Authority ("NYCHA") Marshal, Edward F. Guida, Jr., unlawfully entered her apartment in the Queensbridge Houses, a public housing development in Long Island City. She brings this complaint against Guida and three other NYCHA employees – Joyce Tseng[2] (the Queensbridge Houses manager),

---

[1] Although the caption names several plaintiffs, the complaint lists Peggy Harley as the only plaintiff, *see* Compl. at 7, ECF No. 1, and only Peggy Harley signed the complaint. Accordingly, the Court deems this action to be brought by Peggy Harley. *See* Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented.").

[2] According to the complaint, Joyce Tseng may also go by "Hsui Tseng." Compl. at 7.

John Doe (a "maintenance" worker), and Jane Doe (an "office worker/management"); two police officers who responded to the incident – Officers Murn and Malik;[3] the New York City Police Department; and two entities, "City Marshal Edward Guida Incorporated" and "Marshal City of New York Badge #14 Incorporated."

Plaintiff's request to proceed in forma pauperis (IFP) is granted.  28 U.S.C. § 1915.  However, for the reasons set forth below, Plaintiff's complaint is dismissed in part, pursuant to 28 U.S.C. § 1915(e)(2)(B).

**I.   Background**

  **A. Factual Allegations**

The following facts taken from the complaint are assumed to be true.  Plaintiff lived in an apartment in Queensbridge Houses, operated by NYCHA, in Long Island City, where her family resided for more than fifty years.  Compl. at 4, 8, ECF No. 1.[4]  By the time of the alleged incident, Plaintiff had been involved in a long-standing eviction dispute with NYCHA.  Id. at 8, 9.  One or more family members living with her had filed for bankruptcy five times, resulting in a stay of the eviction proceeding.  Id.

---

[3] The complaint only refers to officers Murn and Malik by their last names.

[4] Page citations refer to the complaint's internal pagination, rather than paragraph numbers or the pagination assigned by ECF.

2

On April 17, 2019, at approximately 3:00 p.m., Plaintiff walked out of her bedroom to see Guida standing in her living room. *Id.* at 4. She told Guida, "Get out, you have no business here, I am not dressed," and asked him to exit while she looked for a document from the Bankruptcy Court. *Id.* He walked out of the apartment, while "joking" and saying, "you look dressed to me." *Id.* at 5. Plaintiff locked the door; however, while Plaintiff was looking for the document, Guida "unlock[ed]" her door and entered the apartment again. *Id.* One of Plaintiff's family members told Guida to leave, and Guida exited but "stuck his foot in the door" to keep it open. *Id.* When Plaintiff's family asked to see a warrant, Guida replied "I got a warrant," but never produced it. *Id.* Also outside of Plaintiff's apartment at this time was "Guida's ten (10) plus person displacing crew," including Jane Doe and John Doe, who had a key to her apartment. *Id.* at 6. Plaintiff alleges these NYCHA officials were acting at the direction of Tseng. *Id.*

Plaintiff found the bankruptcy document and gave it to Guida, which she alleges had been sent to him by fax and mail and proved he "did not have jurisdiction to enter." *Id.* at 5. She attaches to the complaint a photo of Guida looking at the document. *Id.* at Exhibit A. Guida told her he had never received it and said to Plaintiff, "you got your stay." *Id.* at 5.

3

Plaintiff then called the police, and "Guida's crew scurried away." *Id*. New York Police Department ("NYPD") officers Murn and Malik responded. *Id.* at 6. Murn took down Plaintiff's complaint, but "did not submit it to the Police station." *Id.* Plaintiff alleges these officers were "personal friends" of Guida, citing a photograph of Guida and Malik on Guida's LinkedIn page. *Id.* 6-7, Exhibit F3.

It is not clear what happened immediately after this event; however, Plaintiff says that her family received a notice of eviction on June 26, 2019. *Id.* at 8. She states that certain of the defendants sent in "a moving crew to evict [her] family along with the help of NYCHA employees," *id.*, but does not indicate if, or when, her family was evicted. Over the years, Plaintiff alleges that Tseng had "unjustly" taken her family into court "more than 50 times," that Tseng targeted her family as part of the "gentrification process in the Long Island City area," and that Tseng was put "in place to remove people of color" from the area. *Id.*

The complaint goes on to allege that between June 2019 and October 2019, unnamed police officers engaged in "bullying" and "scare tactics" when they parked their vehicles in front of Plaintiff's building and flashed their lights into her apartment windows. *Id.* at 16. She also saw Malik "leaning on the gates

4

directly facing" her building, which, she alleges, was an "intimidation tactic." *Id.*

Plaintiff reports that she suffers from anxiety following Guida's unauthorized entrance. She cannot sleep and is "startled by every sound while at home, thinking that it is [Guida] breaking in and [v]iolating [her] family again." *Id.* at 11. She and her family are "constantly looking over [their] shoulders" wondering if they will be "ambushed by Guida, his crew, or police officers." *Id.* at 13.

## B. Claims for Relief

Plaintiff seeks millions of dollars in damages due to federal and state-law violations. She asserts general constitutional abuses – that defendants "violat[ed] the Constitution" and her "family's civil rights." *See, e.g.*, 13. Against Guida,[5] she alleges "negligence," "fraud," "harassment," "burglary," "unlawful entry" without a warrant, "trespassing," and invasion of "her family's privacy and religious protocol," and, it seems, intentional infliction of emotional distress. *Id.* at 5, 13-14. She also claims that "Marshal Guida's

---

[5] The complaint also raises a number of other allegations related to Guida and his family. In 2010, Plaintiff states that Guida's father, now deceased, evicted certain family members from another Long Island City residence, and they "have yet to figure out what happened to the four (4) new stoves and (4) refrigerators that were in that house." Compl. at 10. Plaintiff also includes a series of general allegations related to a funeral home run by the Guida family and its involvement in apparent organ harvesting. *Id.* Plaintiff, however, does not seek relief as to any of these claims.

5

Corporation" is part of an "ongoing conspiracy," *id.* at 14, although does not identify what that entity is or the conspiracy in which it is alleged to be involved. She brings claims against Tseng, John Doe, and Jane Doe for "aiding, abetting, and facilitating" the "illegal break in," and against Tseng for "fraud," "harassment", and other intentional torts. *Id.* at 14-15. She also sues NYCHA for "failure to supervise" and for "failing to take basic and reasonable steps to protect dwellers from harm." *Id.* at 12, 14. She identifies no claim against "Marshal City of New York Badge #14 Incorporated."

As to the police defendants, she alleges they have "conspired" with and "aid[ed] and abet[ted]" Guida "to conceal a crime" by omitting to file or investigate her complaint of the April 17, 2019 incident. *Id.* at 15. She also alleges that Malik and other unnamed officers engaged in "intimation" and "threats" towards her and her family. *Id.* at 15-16. She asserts the NYPD failed to supervise its employees and "obstruct[ed] justice." *Id.* at 13.

In addition to compensatory damages, she seeks a "declaratory judgment," but does not explain what for. *Id.* at 16. She also demands that Guida, Tseng, Jane Doe, John Doe, Malik, and Murn be fired. *Id.* at 13-16.

6

**II.   Standard of Review**

*Pro se* complaints are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, they must still plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the Court assumes all factual allegations contained in the complaint to be true, this tenet is inapplicable to "legal conclusions" and "mere conclusory statements." *Id.*

Under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss an *in forma pauperis* action if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief from a defendant who is immune from such relief." An action "is frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (cleaned up).

**III. Discussion**

  **A. Section 1983**

To assert a claim under Section 1983, a plaintiff must establish that a person acting under color of state law deprived

7

her of rights, privileges, or immunities guaranteed by the Constitution or federal law. *See, e.g., Parratt v. Taylor*, 451 U.S. 527, 535 (1981). In the complaint, Plaintiff identifies no specific constitutional provision or federal law that she believes the defendants violated. The Court must therefore read the complaint liberally to determine whether Plaintiff alleges a constitutional claim and, if so, whether that claim may proceed past *IFP* review pursuant to 28 U.S.C. § 1915(e)(2)(B).

1. **NYCHA Individual Defendants**

The gravamen of Plaintiff's complaint is that on April 17, 2019, Guida, a city official, entered her apartment without a warrant or consent, with the aid of other city employees, John Doe and Jane Doe. This allegation clearly sounds in the Fourth Amendment. Absent consent or another applicable exception, a warrantless entry is "*per se* unreasonable under the Fourth Amendment," *Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 53 (2d Cir. 2003), including in the context of an eviction proceeding. *See Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 69 (1992) ("[T]he right against unreasonable seizures would be no less transgressed if the seizure of the house was undertaken to collect evidence, verify compliance with a housing regulation, effect an eviction by the police, or on a whim, for no reason at all."); *see also Perry v. Sheahan*, 222 F.3d 309, 316 (7th Cir. 2000) (stating that *Soldal* found Fourth

8

Amendment limitations to apply "even during an eviction," including "after an eviction is stayed"); *Poe v. Leonard*, 282 F.3d 123, 137 (2d Cir. 2002) (explaining that the Supreme Court extended the scope of the Fourth Amendment to cover non-law enforcement conduct, including conduct for "some sort of investigatory or administrative purpose designed to elicit a benefit for the government"). Plaintiff alleges that Guida, with assistance of Jane Doe and John Doe, entered her apartment twice without consent; that Guida did not produce a warrant; and that there was no basis for a warrant, in any event, because any eviction proceeding had been stayed due to multiple bankruptcy filings by her family members. The Fourth Amendment claim may therefore proceed past *IFP* review against Guida, Jane Doe, and John Doe.

The Fourth Amendment claim against Tseng, however, fails to state a basis for relief. To be liable for a Section 1983 violation, Plaintiff must show "each of the named defendants was personally involved in the wrongdoing or misconduct." *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). A supervisor like Tseng may be held personally liable only if she was a "direct participant" in the constitutional violation, which "includes a person who authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally." *Terebesi v. Torreso*, 764 F.3d 217,

9

234 (2d Cir. 2014).  But Plaintiff alleges no plausible facts concerning Tseng's personal involvement or direct participation.  Instead, she makes conclusory statements that Tseng "spearheaded" the entry.  Plaintiff also alleges Tseng was responsible for fifty prior "unjust" eviction proceedings against the family, but alleges no facts as to those events.  The Fourth Amendment claim against Tseng is dismissed, with leave to replead.

In addition, based on a liberal reading of the complaint, Plaintiff appears to contend that Tseng engaged in selective enforcement in violation of the equal protection clause of the Fourteenth Amendment.  *See Adler v. Kent Vill. Hous. Co.*, 123 F. Supp. 2d 91, 98 (E.D.N.Y. 2000) (analyzing, under the selective enforcement doctrine, the claim that defendants targeted Jewish tenants for eviction).  To state a selective enforcement claim, Plaintiff must first show that she, "compared with others similarly situated, was selectively treated"; and second, "that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith to injure a person."  *LaTrieste Restaurant & Cabaret Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994).

Here, Plaintiff alleges that Tseng brought her family to court "more than 50 times" as part of an effort to "remove people of color" from Long Island City. However, Plaintiff makes no other factual assertions concerning how Tseng targeted her family or showing that this conduct was based on race, and she makes no factual allegations regarding similarly situated individuals. Plaintiff's equal protection claim against Tseng is dismissed, with leave to amend.

### 2. Officers Murn and Malik

Reading the complaint liberally, the Court can identify no theory to underpin a constitutional claim against either of the NYPD officers. The complaint alleges no more than the officers' mere presence at the scene. With no affirmative misconduct alleged, these claims must be dismissed. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 760, 765 (2005) (noting the "well established tradition of police discretion"); *Morris v. City of N.Y.*, No. 14-CV-1749, 2015 WL 1914906, at *5 (E.D.N.Y. Apr. 27, 2015) ("[P]olice officers have no affirmative duty to investigate complaints, as the government and its agents are under no general duty to provide public services or protection to individual citizens."). It follows that any claim

11

under 42 U.S.C. § 1985 that the officers "conspired" with and "aid[ed] and abet[ted]" Guida "to conceal a crime," also fails.

Also, there is no cognizable Section 1983 claim for intimidating or threatening behavior. *See Politi v. City of New York*, No. 03-CV-2112, 2005 WL 8156892, at *3 (E.D.N.Y. Dec. 12, 2005) (noting that the tort of intentional infliction of emotional distress is not cognizable under Section 1983); *see also Jackson v. Goord*, No. 96-CV-6816, 1997 WL 728243, at *4 (S.D.N.Y. Nov. 20, 1997) ("The averment that a tort was committed under color of state law is not enough.  Courts have consistently held that torts by themselves do not violate the Eighth Amendment.").  The presence of Malik and other officers in the Queensbridge Houses development, as pleaded by Plaintiff, does not violate her constitutional rights.

Therefore, defendants Malik and Murn are dismissed.

### 3. NYCHA

Plaintiff alleges that NYCHA[6] failed "to supervise and oversee it's [sic] employees" and failed "to take basic and reasonable steps to protect dwellers from harm."  A municipal entity, such as NYCHA, is liable under Section 1983 only if a plaintiff can show a municipal policy or custom that caused the

---

[6] Unlike the NYPD, the NYCHA is a suable entity.  *See Southerland v. Woo*, No. 99-CV-3329, 2013 WL 5532628, at *1 (E.D.N.Y. Oct. 3, 2013) ("NYCHA is a separate municipal corporation with its own charter.").

12

deprivation of her constitutional rights.  *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978).  Section 1983 does not reach *respondent superior* liability.  *Id.*  In addition, a municipality may be liable for failure to supervise only where the plaintiff establishes that defendant "should have known their inadequate supervision was so likely to result in the alleged deprivations so as constitute deliberate indifference." *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007).  Here, Plaintiff does not allege that NYCHA maintains a policy or practice which led to the deprivation of her rights, or that NYCHA's actions constituted deliberate indifference.  Plaintiff's constitutional claims against NYCHA are dismissed, with leave to amend.

### 4. NYPD

Plaintiff cannot sue the NYPD.  Under Rule 17(b)(3) of the Federal Rules of Civil Procedure, a municipal entity's "capacity" to be sued in federal court is generally determined by the law of the state in which the district court is located.  Here, the relevant authority is the New York City Charter, which provides that actions and proceedings to recover penalties for legal violations shall be brought against the City of New York and not any agency thereof, except where otherwise provided by law.  *See* N.Y.C. Charter Ch. 17, § 396.  It is well recognized in this Circuit that agencies of New York City are

not "suable" entities, including in 1983 actions.  See *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); see also *Baily v. New York City Police Dept.*, 910 F. Supp. 116, 117 (E.D.N.Y 1996).  The NYPD is an agency of New York City, and therefore it cannot be sued.  The NYPD is dismissed with prejudice.

    **5. Other Entities**

Plaintiff also names "City Marshal Edward Guida Incorporated" and "Marshal City Of New York Badge #14 Incorporated" as defendants.  It is not clear to what entities she refers, although both seem related to Guida – whose badge number is fourteen, according to Plaintiff.  If they are private corporations, then Section 1983 does not apply, because they are not "persons acting under color of state law."  These defendants are dismissed with prejudice.

  **B. State-Law Claims**

The Court declines to exercise supplemental jurisdiction over the state-law claims against the defendants as to whom no federal claims remain – namely, Tseng, Murn, Malik, NYCHA, NYPD, "City Marshal Edward Guida Incorporated," and "Marshal City Of New York Badge #14 Incorporated."  *See* 28 U.S.C. § 1367(c)(3).

As to Guida, Jane Doe, and John Doe, Plaintiff alleges a variety of state criminal-law claims.  These criminal claims

14

fail, and are frivolous, because they are based on New York State criminal statutes that create no private right of action. *See, e.g.*, N.Y. Penal Law § 140.30.

Against Guida, Plaintiff also alleges harassment, fraud, negligence, trespass, invasion of privacy, and, it seems, intentional infliction of emotional distress.  New York does not recognize a common-law cause of action for harassment. *Edelstein v. Farber*, 27 A.D.3d 202, 202 (N.Y. App. Div. 2006). The tort claim for fraud is frivolous, because Plaintiff makes no allegations that she relied on any material misrepresentation by Guida.  *See Garendean Realty Owner, LLC v. Lang*, 175 A.D.3d 653, 653 (N.Y. App. Div. 2019) ("The elements of a cause of action [alleging] fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages.").  The tort claims for negligence, trespass, invasion of privacy, and intentional infliction of emotional distress, however, may proceed past *IFP* review.  The Court retains jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

**IV. Conclusion**

Plaintiff's request to proceed *IFP* is granted pursuant to 28 U.S.C. § 1915.  For the reasons set forth above, defendants Tseng, Murn, Malik, the NYCHA, "City Marshal Edward Guida Incorporated," and "Marshal City Of New York Badge #14

15

Incorporated" are dismissed. 28 U.S.C. § 1915(e)(2)(B). The NYPD is dismissed with prejudice. *Id.* The Court grants Plaintiff leave to amend the complaint with respect to the Fourth and Fourteenth Amendment claims against Tseng, as well as the *Monell* claim against NYCHA. The amended complaint must be filed within thirty days of the date of this Order.

The Fourth Amendment claim against defendants Guida, Jane Doe, and John Doe may proceed, in addition to the sate-law claims for negligence, trespass, invasion of privacy, and intentional infliction of emotional distress against Guida. The Court directs the Clerk of Court to issue a summons against Guida and directs the United States Marshals Service to serve the summons and complaint on him.[7] The Court refers this matter to Magistrate Judge Lois Bloom for pretrial supervision.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore

---

[7] Plaintiff has not provided enough information about John Doe and Jane Doe to enable the Court to assist in identifying them at this time. Thus, the U.S. Marshals will be unable to serve these parties until they are identified.

*in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

/s Eric Komitee
Eric Komitee
United States District Judge

Dated: July 21, 2020
Brooklyn, New York

17